* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission modifies and affirms the decision of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employee/employer relationship existed between plaintiff and Roses Stores at the time of the alleged injury.
2. Employer is self-insured and its servicing agent was Hewitt Coleman Associates at the time of the alleged injury.
3. The date of the alleged injury was on or about December 5, 2003.
4. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged injury.
5. Plaintiff's average weekly wage at the time of the alleged injury was $928.98. This yields a compensation rate of $619.32.
 * * * * * * * * * * *
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On December 5, 2003, plaintiff was a truck driver for Roses Stores and had been such for five years. He drove Roses' trucks and delivered merchandise to Roses, Super 10, and Maxway stores, all owned by Roses Stores. On December 5, 2003, plaintiff traveled his route of Super 10 Stores from the warehouse in Henderson to Clinton, Wallace, Beulaville, and Warsaw, and then returned to Henderson.
2. At his first stop, the Clinton Super 10 store, plaintiff felt an acute onset of low back pain as he tried to roll up the door on the tractor-trailer to unload merchandise. Apparently, some of the load was jammed up against and hindering the opening of the door. He continued working at that stop with the assistance of the store manager and another employee. The pain became progressively worse as he lifted boxes during the unloading, and in particular he experienced increased pain while moving heavy boxes filled with Clorox bleach. He told the store manager of the Clinton store, whose name he did not know, about the injury to his low back. He then proceeded to the next stop on his route and experienced increasing back pain as he drove to that location.
3. At the next stop, in Wallace, North Carolina, plaintiff had difficulty turning his body in the cab of the truck as he backed the truck to the loading dock. The store manager at that location commented on the difficulty he had backing the truck, and plaintiff explained that he was having difficulty because he had hurt his back at the first stop of the day. At the Wallace location he unloaded merchandise using a roller conveyor, but he did so with difficulty and it took longer than usual. He completed the unloading at that stop and proceeded to the next stop, in Beulaville.
4. In Beulaville plaintiff was assisted in unloading by the store manager and another helper, and the three of them discussed disabilities each was experiencing at the time. Plaintiff explained to them that he had suffered an injury that morning. Plaintiff proceeded to the final stop for the day, in Warsaw.
5. In Warsaw, plaintiff completed unloading with a rolling conveyor with difficulty and then returned to the Distribution Center in Henderson.
6. After returning to Henderson, plaintiff spoke with Fadine Edwards, the dispatcher, and told her that he had injured his back. He completed his paperwork for the day's trip and went home as usual.
7. The following morning, a Saturday, plaintiff was scheduled to attend a safety meeting at work. When he awoke he was in pain and he felt he could not attend the meeting and therefore called his supervisor, Terry Ellenwood, to advise that he could not attend. Ellenwood instructed him to call the security guard, Macon Critcher, about his injury. Critcher documented plaintiff's statement to him that he had been injured the previous day, and plaintiff thereafter went to the emergency room at Durham Regional Hospital.
8. Plaintiff received a medical excuse note from the emergency room doctor restricting him from any lifting, which he took to Safety Specialist Tom Hardee at the Henderson distribution center. Hardee instructed him to proceed to the company approved doctor, Michael Mahan, M.D. Dr. Mahan first saw him on December 10, 2003, and followed up with him several times thereafter. Dr. Mahan prescribed medication, x-rays, and physical therapy and restricted him from driving. The treatment recommendations were not completed as plaintiff did not have money to pay for it, and the workers' compensation claim was denied. Plaintiff continued treating with Dr. Mahan through at least March 1, 2004, and he has seen no other doctor for this injury.
9. Plaintiff's description of the injury is corroborated by Dr. Mahan's records. Although there is some discrepancy with respect to exactly how the injury occurred, with Dr. Mahan's records and the Form 18 indicating that plaintiff was lifting merchandise at the time of the injury, and plaintiff testifying that he experienced the initial onset of pain while lifting the truck door, plaintiffs testimony is credible. Plaintiff testified that he did experience pain while lifting merchandise after the initial onset, and it would not be unusual for him to describe the injury in such terms to his treating doctor. Plaintiff reported his injury immediately upon his return to Henderson, North Carolina.
10. Due to his compensable injury and the medical restrictions of no lifting or driving that resulted therefrom, plaintiff was unable to work from December 6, 2003, through at least March 3, 2004, and continuing. Immediately after his firing he began to look for work within his restrictions and he filed for unemployment compensation. Plaintiff acquired work with "Just Tires" beginning on March 30, 2004. He worked three weeks, eight hours a day. Plaintiff testified that he could not continue with this type of work because of the lifting and the Full Commission finds his testimony to be credible. His brief employment with Just Tires was a failed return to work, since his injuries and pain made that job unsuitable.
11. Plaintiff had suffered two back injuries prior to the injury in December 2003. In June 2000, plaintiff sustained an injury to the upper part of his back that did not result in symptoms in his legs. In August 2002 he suffered a low back injury that resulted in low back pain and symptoms involving his left leg. Plaintiff received medical treatment for both of the prior injuries and was paid for disability for each. Plaintiff was not receiving any medical treatment for his back at the time of the injury on December 5, 2003, and he was not experiencing back pain or other symptoms at the time of that injury.
12. Plaintiff was fired from his job on or about March 3, 2004. The reason for plaintiffs firing is unclear to the Full Commission.
13. Plaintiff applied for and was granted unemployment benefits. Plaintiff was receiving $330.00 in weekly unemployment benefits. To obtain such benefits, plaintiff represented to the Employment Security Commission that he was willing and able to work within the restrictions outlined by his medical providers. He was unable to find work within his restrictions although he continued looking through the date of the hearing before the Deputy Commissioner.
14. Defendants go to great length in their brief to argue that the employer and carrier were justified in their denial of plaintiff's claim. These arguments are without avail since defendants failed to appeal from the Deputy Commissioner's finding that plaintiff sustained a compensable specific traumatic incident of the work assigned.
15. Defendants also argue that plaintiff's compensable disability ended at least by March 4, 2004, since, in the view of defendants, the restrictions given by Dr. Mahan were effective only through that date.
16. Plaintiff has met his burden of proving he was totally disabled after the injury. The evidence is uncontradicted in the following key respects: (1) that plaintiff was told by the ER orthopedist to take a couple of days off of work after the injury; that the doctor gave him a medical note, which he took to Mr. Hardee; (2) that plaintiff was not offered work by the defendant-employer at that time or any time thereafter; (3) that Dr. Mahan gave work restrictions at his initial medical evaluation on December 10, 2003 and that those restrictions remained in place continuously thereafter; (4) that plaintiff's counsel wrote to the defendant-employer during the time plaintiff was out of work requesting that light-duty work be provided, if available; (5) that plaintiff was terminated by the defendant-employer when his FMLA leave of absence expired without any job ever having been offered; (6) that plaintiff then immediately began to look for suitable work within his restrictions; (7) that he was unable to find suitable work despite a reasonable effort to do so; and (8) that he remained out of work because of the injury at the time of the hearing before the deputy commissioner. Plaintiff would have been willing to work within his restrictions had work been available and offered to him. None was offered to him, and he therefore never returned to work after the injury, other than for one unsuccessful effort in late March 2004.
17. Notwithstanding defendants' arguments, Dr. Mahan's restrictions were never lifted, since plaintiff was not able to obtain the medical treatment he needed to lessen the period of his disability. The workers' compensation claim was denied shortly after plaintiff began seeing Dr. Mahan and defendants refused to pay for treatment. It should be noted that the basis for denial given by Ms. Steadman at the hearing was that no specific event of injury had been identified. This logic fails to take into consideration the Richards v. Town of Valdese line of cases that recognize the happening of an "injury by accident" when the injury has been sustained within a "cognizable time period." Richards v. Town of Valdese, 92 N.C. App. 222, 225,374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337,378 S.E.2d 799 (1989). No other reasonable basis for denial was identified. Moreover, the investigation resulting in denial was far from complete in that no documents, such as the employer's accident report or medical records, were obtained that could have corroborated plaintiff' claim of work injury, and no witnesses were interviewed. In any event, at the time of the hearing this situation remained the status quo. Absent a showing that work was available within the restrictions and that plaintiff could obtain such work, the disability period was ongoing at the time of the hearing. Bridges v. Linn-Corriher Corp., 90 N.C. App. 397,368 S.E.2d 388 (1988). Plaintiff never was able to obtain the orthopedic evaluation first recommended by the ER physician due to denial of the claim and consequent financial difficulties, and he remained disabled as a result.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a specific traumatic incident of the work assigned arising out of and in the course of his employment on December 5, 2003. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is in need of and is entitled to receive medical treatment as a result of his compensable injury. N.C. Gen. Stat. § 97-25.
3. Plaintiff has shown that this injury by accident has impaired his earning capacity. Plaintiff has also proved that he has been temporarily totally disabled since before his termination. N.C. Gen. Stat. § 97-29.
4. Plaintiff has not proved that this case was unreasonably defended and therefore is not entitled to attorney fees paid by the Defendant. N.C. Gen. Stat. § 97-88.1.
5. Defendants are entitled to credit for unemployment compensation paid to plaintiff during his disability. N.C. Gen. Stat. § 97-42.1. Defendants are also entitled to credit for earnings plaintiff received during his failed return to work at Just Tires.
6. An ability to work with restrictions does not equate to the end of the disability period. The case law concerning this issue makes clear that defendants must demonstrate that the employee can actually obtain suitable employment taking into account factors such as the employee's work restrictions, age, work experience, other health problems, and the like before the presumption is rebutted. See Bridges v. Linn-Corriher Corp.supra. Defendants have not demonstrated that here.
7. Similarly, plaintiff's application for unemployment benefits does not equate to the end of the disability period. It is clear that an employee may simultaneously receive unemployment compensation and be disabled under the North Carolina Workers' Compensation Act. This is established by the existence of N.C. Gen. Stat. § 97-42.1, which states: "If an injured employee has received unemployment benefits under the Employment Security law for any week with respect to which he is entitled toworker's compensation benefits for temporary total or permanentand total disability, the employment benefits paid for such weeks may be deducted from the award to be paid as compensation." (Emphasis added) If an application for unemployment benefits automatically disqualified an employee from receiving disability compensation, this provision would have no applicability. The annotations to this statute show many examples of an employee applying for and receiving unemployment benefits and simultaneously receiving disability compensation for their workers' compensation claim. The present case is no different.
 * * * * * * * * * * *
Based upon the foregoing the Full Commission makes the following:
 AWARD
1. All medical treatment incurred or to be incurred as a result of plaintiff's compensable injury by accident of December 5, 2000 shall be paid by defendants. Said treatment includes recommended treatment by Dr. Michael Mahan.
2. Subject to the attorney's fees set forth below and to credit for unemployment compensation and earnings from Just Tires, defendants shall pay to plaintiff weekly compensation at the rate of $619.32 per week from December 6, 2003, until plaintiff is able to return to work at the same or greater wages or until further order of the Industrial Commission. Defendants shall pay interest at 8 percent per year from June 24, 2004. Defendants shall pay all compensation that has accrued in a lump sum, with 75% payable to plaintiff and 25% payable to plaintiff's attorney as reasonable attorney fees. Thereafter defendants shall pay $619.32 weekly to plaintiff with every fourth check being paid by defendants directly to plaintiff's attorney as reasonable attorney fees.
3. Defendants shall pay the costs, including an expert witness fee of $260.00 to Dr. Michael Mahan.
This 24th day of May 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER